COURT OF APPEALS
DECISION
DATED AND FILED

June 25, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP638-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2022CF487

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

TYLER C. SPETH,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Jefferson County: BENNETT J. BRANTMEIER, Judge. *Affirmed*.

Before Kloppenburg, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. A jury convicted Tyler Speth on seven counts of sexual assault-related conduct. Speth filed postconviction motions seeking judicial recusal and a new trial. The circuit court denied both motions. On appeal, Speth argues that the court erred in denying his recusal motion; that he is entitled to a new trial based on 14 instances of ineffective assistance of trial counsel and newly discovered evidence; and that he is entitled to a new trial in the interest of justice. We reject Speth's arguments and, accordingly, affirm.

## BACKGROUND

¶2 In November 2022, the State filed a criminal complaint charging Speth with exposing genitals to a child, causing a child to expose the child's intimate parts, and sexual intercourse with a child. The charges arose from conduct that A.B. described in statements to Lake Mills Police Officer Brandon Hanley and in forensic interviews.[1] In those statements, A.B. said that, between June and November 2022, when she was 16 years old and working at an insurance office in Lake Mills, her employer, Speth, offered to pay her for sexual favors and sexually assaulted her.

¶3 The case proceeded to a jury trial on seven counts as charged in the third amended information: soliciting a child for prostitution; exposing genitals to a child; two counts of sexual intercourse with a child; causing a child to expose the child's intimate parts; and two counts of child enticement. The soliciting a child for prostitution count related to Speth's alleged proposal and subsequent practice of paying A.B. for more hours than she actually worked in return for sexual

---

[1] We refer to the victim using fictitious initials. *See* WIS. STAT. § 809.86(4). All references to the Wisconsin Statutes are to the 2023-24 version.

2

favors. Three of the counts—causing a child to expose the child's intimate parts, one count of sexual intercourse with a child, and one count of child enticement—related to an incident in which Speth allegedly had penis-to-vagina intercourse with A.B. in the basement of the insurance office. The remaining three counts—exposing genitals to a child, one count of sexual intercourse with a child, and one count of child enticement—related to an incident in which Speth allegedly had A.B. perform oral sex on him in the sales office on the ground floor of the insurance office.

¶4     The trial took place over the course of five days in July and August 2023. During the trial, the jury heard testimony from 23 witnesses including A.B., A.B.'s mother, several of A.B.'s friends, several of A.B.'s former coworkers and other employees at the insurance office, police officers involved in the investigation, mental health professionals, a Wisconsin State Crime Laboratory DNA analyst, and Speth's wife. Speth did not testify.

¶5     After the close of evidence, the circuit court allowed the State to file a fourth amended information. The fourth amended information switched the dates of the offenses for two of the counts. Defense counsel declined the court's offer to reopen evidence for the defense to offer additional information or evidence in response to the fourth amended information.

¶6     The jury found Speth guilty on all seven counts as charged in the fourth amended information. The circuit court ordered concurrent sentences totaling five years of initial confinement and six years of extended supervision.

¶7     Speth subsequently moved the circuit court to recuse itself from all postconviction proceedings, based on the court's alleged personal relationships

with two persons purported to be connected with A.B. The court issued an oral ruling denying the recusal motion.

¶8    Speth also filed a postconviction motion seeking a new trial based on multiple claims of ineffective assistance of trial counsel and on newly discovered evidence consisting of A.B.'s claims in the civil lawsuit that she filed against Speth after his conviction. The circuit court held a *Machner* hearing on Speth's postconviction motion.[2] At the hearing, the court heard testimony from several witnesses, including A.B.'s former coworkers and a former intern at the insurance office, Speth, and both of Speth's trial counsel.

¶9    After further briefing and oral argument from the parties, the circuit court denied Speth's postconviction motion in its entirety.

¶10    Speth appeals.

¶11    We will present additional pertinent background, testimony, and details of the circuit court's rulings in our analysis of each of Speth's appellate arguments.

## DISCUSSION

### I. Recusal

¶12    Speth argues that the circuit court erred in denying his motion for recusal, because the court's purported "personal relationship with two individuals

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). A *Machner* hearing is "[t]he evidentiary hearing to evaluate counsel's effectiveness." *State v. Balliette*, 2011 WI 79, ¶31, 336 Wis. 2d 358, 805 N.W.2d 334.

involved in this prosecution gives the appearance of bias." We conclude that Speth fails to show that the circumstances presented in the record provide a basis for rebutting the presumption of the court's impartiality.

¶13 "'The right to an impartial judge is fundamental to our notion of due process.'" *Miller v. Carroll*, 2020 WI 56, ¶15, 392 Wis. 2d 49, 944 N.W. 2d 542 (quoted source omitted). "We presume that a judge has acted fairly, impartially, and without bias." *Id.*, ¶21. "To overcome that presumption, the burden is on the party asserting judicial bias to show bias by a preponderance of the evidence." *Id.* "In determining whether a defendant's due process right to trial by an impartial and unbiased judge has been violated, Wisconsin courts have taken both subjective and objective approaches[.]" *State v. Herrmann*, 2015 WI 84, ¶26, 364 Wis. 2d 336, 867 N.W.2d 772.

¶14 The question of subjective bias is whether the judge has determined that the judge cannot be impartial. *State v. McBride*, 187 Wis. 2d 409, 415, 523 N.W.2d 106 (Ct. App. 1994). Here, Speth does not contend that the judge determined that he was subjectively biased. Rather, he contends that the judge was objectively biased.

¶15 In determining whether a judge is objectively biased, "[w]e ask whether there is 'a serious risk of actual bias—based on objective and reasonable perceptions.'" *Miller*, 392 Wis. 2d 49, ¶24 (quoted source omitted). The question of objective bias is whether a reasonable person could conclude that the average judge with ordinary human tendencies and weaknesses could not be trusted to remain neutral under the circumstances or whether there are objective facts demonstrating that the judge treated the defendant unfairly. *State v. Goodson*, 2009 WI App 107, ¶9, 320 Wis. 2d 166, 771 N.W.2d 385. "'Due process requires

an objective inquiry' into whether the circumstances 'would offer a possible temptation to the average ... judge to ... lead [the judge] not to hold the balance nice, clear and true.'" *Miller*, 392 Wis. 2d 49, ¶24 (alterations in original; quoted source omitted).

¶16    However, "it is the exceptional case with extreme facts which rises to the level of a serious risk of actual bias." *Id.* (internal quotation marks and quoted source omitted). Whether a judge's partiality can reasonably be questioned is an issue of law that we review de novo. *Id.*, ¶15.

¶17    In the circuit court, Speth based his recusal motion on the circuit court's purported relationships with Sherry Lange and Jennifer Pitzner. On appeal, Speth presents argument only as to Lange. Accordingly, Speth has abandoned his argument as to Pitzner, and we address only his argument as to Lange, whose association with the trial was as employer of one of the trial witnesses.

¶18    On the second day of trial, the judge noted to the parties that Lange was observing the trial in the gallery, and that the judge had known Lange for several decades through a community civic organization. The judge stated that he did not need to recuse himself because of this association with Lange.

¶19    Speth argues that there was an appearance of bias because "the [circuit] court recognized that it had a significant personal relationship with Lange, who was a close friend and public supporter of [A.B.] Lange attended the trial proceedings and sentencing…." However, Speth cites no evidence in the record showing that the judge had "a significant personal relationship with" Lange beyond their participation in the same civic organization, no evidence showing that Lange was a friend of A.B., and no evidence that Lange observed sentencing

or supported A.B. In the absence of this record support, Speth fails to rebut the presumption of the court's impartiality.

## II. Ineffective assistance of counsel

¶20 The United States Constitution guarantees to criminal defendants the right to the effective assistance of counsel. *State v. Domke*, 2011 WI 95, ¶34, 337 Wis. 2d 268, 805 N.W.2d 364; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To demonstrate that counsel's assistance was ineffective, the defendant must establish both "that counsel's performance was deficient and that the deficient performance was prejudicial." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. "[T]here is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. The defendant bears the burden of proof on both of these prongs. *Id.* at 687-88. Here, we resolve Speth's ineffective assistance of counsel claims based on his failure to show deficient performance; therefore, we do not address prejudice.

¶21 Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoted source omitted). In other words, professionally competent assistance encompasses a "wide range" of conduct, and a reviewing court starts with the presumption that counsel's assistance fell within that wide range. *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects

7

of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." ***Id.***

¶22    This court is "highly deferential" to counsel's strategic decisions. ***Id.*** "This court will not second-guess a reasonable trial strategy," unless "it was based on an 'irrational trial tactic' or 'based upon caprice rather than upon judgment.'" ***Domke***, 337 Wis. 2d 268, ¶49 (quoted source omitted). On the other hand, "we cannot ratify a lawyer's decision merely by labeling it … 'a matter of choice and of trial strategy.'" ***State v. Felton***, 110 Wis. 2d 485, 502, 329 N.W.2d 161 (1983). Counsel's choice of strategy must be objectively reasonable. ***State v. Jenkins***, 2014 WI 59, ¶36, 355 Wis. 2d 180, 848 N.W.2d 786. We evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." ***Strickland***, 466 U.S. at 690.

¶23    Whether a defendant received ineffective assistance of counsel is a mixed question of fact and law. ***Domke***, 337 Wis. 2d 268, ¶33. We uphold the circuit court's findings of fact, "'includ[ing] the circumstances of the case and … counsel's conduct and strategy,'" unless those findings are clearly erroneous. ***Id.*** (alteration in original; quoted source omitted). Whether those facts constitute deficient performance is a question of law that we review independently. ***Id.***

*A. Failure to present alibi testimony*

¶24    As charged by the State, one of the two separately charged instances of sexual assault, involving sexual intercourse, occurred on August 9, 2022; the other, involving oral sex, occurred between August 11 and 14, 2022. Speth argues that trial counsel were ineffective for failing to present alibi evidence consisting of testimony by A.B.'s coworker Kylie Puttkamer regarding August 9 and by Todd Gerstner, a bartender at the American Legion, regarding August 12.

8

## *1. Additional background*

### *a. August 9 incident testimony*

¶25    At trial, A.B. testified as follows about the incident on August 9, 2022. She was at the insurance office with Speth at 5:00 at the end of the workday on August 9, 2022, and Speth had sexual intercourse with her in the basement at that time. The incident took no longer than ten minutes, after which A.B. left to go to her other job as a hostess at a nearby restaurant. Puttkamer, A.B.'s coworker at the insurance agency, had left a little early that day, and no one else was in the office when Speth had sexual intercourse with her.

¶26    At trial, Speth's wife testified that on August 9, Speth texted her at 4:50 p.m. that he would pick up her and their daughter at their home, which was about five minutes from the insurance office, to take them to the golf course, which was about six to seven minutes from their home. She authenticated a picture of the three of them in the golf course parking lot at 5:21 p.m.

¶27    Also at trial, Puttkamer testified as follows. She generally worked until 5:00 or a little after 5:00 at the insurance agency, but never left before 5:00 unless she had something going on. She was the person who locked up the office at 5:00 almost every day in the summer of 2022, except for "a handful" of days when she did not. She never locked up the office with A.B. still in the office. She could not recall that A.B. ever stayed late. Puttkamer would continue to work for Speth if he still owned the agency.

¶28    At the ***Machner*** hearing, Puttkamer testified as follows. On August 9, 2022, Speth was out of the office all afternoon, and she left the

insurance office at 5:00 with A.B. Puttkamer shared this information about August 9 with Speth's trial counsel before trial.

¶29 Also at the *Machner* hearing, trial counsel testified as follows. Counsel prepared Puttkamer for trial, questioned her about potential alibi information, and specifically asked her about the dates of Speth's charged criminal conduct, including August 9. Puttkamer did not mention being in the office on August 9 and Speth not being there. Had Puttkamer told counsel that Speth had left the office at a specific time on August 9, that Puttkamer was present and Speth was not, or that Puttkamer left with A.B., counsel would have presented that testimony at trial.

¶30 Speth testified that he was "in awe" that counsel did not ask Puttkamer about August 9.

### b. August 11-14 incident testimony

¶31 At trial, testimony by A.B. and Officer Hanley, and portions of A.B.'s forensic interview played for the jury, indicated the following about the incident between August 11 and 14, 2022. A.B. performed oral sex on Speth in the sales room on the ground floor of the insurance office at the time of Riverfest, which was held between August 11 and 14, 2022. The oral sex occurred during a workday, which meant that it occurred on August 11 or 12.

¶32 Also at trial, Speth's wife testified that, on August 11, Speth texted her at 4:32 p.m. about golfing after work. When she asked him when he would be able to leave, Speth responded, "I don't know if this will take ten minutes or an hour. LOL." At 5:00, Speth texted her, "I'm good now," meaning that he was leaving the office. She authenticated a picture of her, Speth, and their daughter on

the golf course at 5:18 p.m. She testified that a text message she received from Speth at 4:48 p.m. on August 12 showed that he was in a meeting at the office at that time.

¶33 At the *Machner* hearing, Gerstner testified as follows. Gerstner knew Speth from Speth coming into the American Legion, where Gerstner was a bar manager. Speth accompanied him to buy a car in the morning of August 12, after which Gerstner went to work at the American Legion. Speth and his family came into the American Legion later that afternoon, around 4:30 to 5:00 p.m.

¶34 Also at the *Machner* hearing, trial counsel testified as follows. Speth had emailed counsel a list of potential witnesses that included Gerstner shortly before trial. Speth had informed counsel that Gerstner could be a helpful character witness, and that Speth had helped Gerstner in various ways, including buying a car. Counsel did not investigate Gerstner further because counsel did not think Gerstner had "relevant and admissible information at the time." Information about Speth being with Gerstner on August 12 would have been "potentially" relevant to Speth's alibi for that date, but the evidence regarding an alibi for August 12 was contradictory. Speth provided one photograph timestamped at 5:09 p.m. on August 12 of his daughter playing on a slot machine at the American Legion, and another photograph that showed him and his daughter asleep on a recliner at home at the same time. Because of these contradictory photographs, counsel did not pursue the American Legion alibi through Gerstner.

*c. Circuit court's ruling*

¶35 In its oral ruling on this issue, the circuit court credited trial counsel's testimony that before trial, Puttkamer never mentioned the details about August 9 to which she testified at the *Machner* hearing. The court also questioned

11

the credibility of Puttkamer's *Machner* hearing testimony. The court credited counsel's testimony that counsel had "concerns about witnesses' memories getting better for our case in odd ways as time went on." The court also found that the contradictory photographs for the alibi defense on August 12 provided a reasonable basis for not calling Gerstner. The court ruled that trial counsel was not deficient "in terms of those alibi witnesses and their testimony."

### 2. *Analysis*

¶36 Based on the circuit court's credibility determinations, which Speth does not show are clearly erroneous, we conclude that counsel was not deficient for failing to present at trial purported alibi testimony by Puttkamer and Gerstner.

¶37 The circuit court credited counsel's testimony that, when counsel questioned Puttkamer during pretrial preparation about potential alibi information, specifically about August 9, Puttkamer did not tell counsel that, on August 9, she and A.B. left at 5:00 and that Speth was not in the office that afternoon. The court did not credit Puttkamer's testimony to the contrary. Counsel is not deficient for failing to produce evidence that was not provided to counsel. *See State v. Carter*, 2010 WI 40, ¶23, 324 Wis. 2d 640, 782 N.W.2d 695 (counsel need only make a reasonable investigation; counsel is not deficient for failing to introduce evidence that is not uncovered after a reasonable investigation).

¶38 The circuit court also credited counsel's testimony that counsel decided not to call Gerstner at trial based on the contradictory photographs on August 12. Speth does not argue that this was an unreasonable strategic decision.

¶39 Speth asserts generally that the circuit court improperly made credibility determinations as to the witnesses, including trial counsel, who testified

at the ***Machner*** hearing. The State responds that a ***Machner*** hearing is an evidentiary hearing at which the circuit court is the trier of fact. Speth does not support his conclusory assertion, either in his initial brief or in his reply brief, with relevant legal authority, and we reject it on that basis. *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (We need not consider arguments that are "unsupported by legal authority …, and we will not abandon our neutrality to develop arguments.").

¶40 In sum on this issue, we conclude that Speth fails to show that trial counsel performed deficiently.

### B. Failure to file notice of alibi

¶41 Speth argues that trial counsel were ineffective for failing to file a notice of alibi under WIS. STAT. § 971.23(8). Had counsel done so, Speth argues, the State would have had to provide Speth with notice of any rebuttal evidence. However, Speth does not on appeal, and did not in the circuit court, identify the alibi witnesses as to whom notice should have been given. Moreover, the consequence for failure to file a notice of alibi is exclusion of alibi evidence, *see* § 971.23(8)(b), but Speth does not identify any evidence or witness testimony that was excluded based on his lack of notice. Accordingly, Speth fails to develop his argument that trial counsel were deficient in this respect, and we reject it on that basis.

¶42 In his reply brief, Speth asserts that the failure to raise an alibi defense is per se ineffective. However, he mischaracterizes the ruling of the case he cites for this proposition. In that case, ***State v. Cooks***, 2006 WI App 262, 297 Wis. 2d 633, 726 N.W.2d 322, the defendant testified to an alibi and trial counsel did not investigate and call the defendant's alibi witnesses, whose names the

13

defendant had provided before trial, when corroboration of the defendant's alibi would have reinforced the defense's misidentification theory. *Id.*, ¶50. Under those circumstances, this court ruled that counsel's failure to investigate the defendant's alibi was deficient and prejudicial. *Id.*, ¶¶50, 65.

¶43 Here, in contrast, counsel did investigate and present alibi testimony by Speth's wife and Puttkamer—with the exception of Puttkamer's new testimony presented postconviction and Gerstner's testimony—which Speth identified to counsel before trial and which provided "a detailed timeline of his whereabouts on the dates of the two sexual encounters." And, as explained above, counsel did not perform deficiently in failing to present Puttkamer's new testimony and Gerstner's testimony. Thus, the circumstances here are materially different from those in *Cooks*.

## C. Failure to call Connor Smith

¶44 Speth argues that trial counsel were ineffective for failing to call as a witness at trial Connor Smith, a former employee of Speth's. We conclude that Speth fails to show that the circuit court erred in determining that this was a reasonable strategic decision.

¶45 During opening statements at trial, trial counsel told the jury that they would hear testimony from Connor Smith, a former employee of Speth's at the insurance office. Counsel told the jury that Smith's testimony would show that Speth often overpaid his employees, and that Speth even paid Smith after he stopped working for Speth. Counsel said that this testimony would support Speth's position that his overpaying A.B. was not in exchange for any sexual favors, but was just a common practice at his office. Smith did not testify at trial.

¶46     At trial, four former employees who worked for Speth at the insurance office testified that it was common for Speth to pay them above their earned wages or commissions.

¶47     At the ***Machner*** hearing, Smith testified that during the four years that he was an intern and employee at the insurance office, on two to four occasions Speth paid him above what he earned from his hourly work and commissions. Smith testified that the extra payments were akin to a bonus or incentive in appreciation and encouragement of his hard work, and that Speth treated his employees generously. Smith testified that Speth also occasionally paid Smith for hours he did not work while Smith was a part-time employee and full-time student. Smith further testified that, when a lawyer called him in connection with this matter to set up a meeting, he did not set up a meeting because he did not want to testify. Smith also testified that he was "called" to appear at the trial and was present at the courthouse during the trial, but he was never called to testify.

¶48     Also at the ***Machner*** hearing, trial counsel testified that, when she told Smith at the start of the trial to come back another day to testify because the trial went so long, he was very upset. Trial counsel testified that she then decided not to call Smith to testify because "[h]e was not happy" and his testimony was cumulative to similar testimony from other employees. Trial counsel admitted that, because Smith was employed as an intern like A.B. when he was overpaid, his testimony was different from that of the other employees, and that that would have been relevant information for the jury to have. Co-counsel testified that, since Smith seemed somewhat reluctant to testify and they had other employees testify about Speth's overpaying them, he concurred in the decision not to call Smith on the fourth or fifth day of a week-long trial.

15

¶49    In its oral ruling on this issue, the circuit court concluded that trial counsel's performance in this respect was not deficient. The court implicitly credited counsel's strategic decision not to call Smith because at that late point in the trial, Smith's testimony as to Speth occasionally overpaying him would have been "laborious" and cumulative to similar testimony of other witnesses. The court noted that it may have also been part of a defense strategy to avoid painting Speth as a rich businessman.

¶50    Speth argues that Smith's testimony would have countered A.B.'s testimony that Speth overpaid her for sexual favors, thereby providing an alternative explanation for Speth overpaying A.B. in support of Speth's defense on the soliciting a child for prostitution charge. Speth argues that the circuit court erroneously found that counsel determined that Smith's testimony would have been cumulative; that the court erred in not accounting for the fact that counsel told the jury in counsel's opening statement that the jury would hear from Smith; and that counsel's testimony that Smith's testimony would have been "laborious" is an insufficient reason for not calling Smith.

¶51    We conclude that the record as reviewed above supports the circuit court's finding that Speth's counsel determined that Smith's testimony—that Speth occasionally overpaid him as a reward for his hard work—would have been cumulative. We also conclude that, while counsel's opening statement might have supported calling Smith nevertheless, that does not render irrational counsel's strategic decision to the contrary. We conclude that Speth fails to show that it was unreasonable for counsel not to call Smith on the fifth day of a week of trial when four other employees had testified that Speth overpaid them and when Smith appeared to be reluctant to testify.

¶52    In sum on this issue, we conclude that Speth fails to show that his trial counsel were deficient in failing to call Smith as a witness at trial.

*D. Failure to present evidence of A.B.'s purportedly false allegation against a co-worker at her other job*

¶53    Speth argues that trial counsel were ineffective for failing to present evidence that A.B. purportedly falsely accused a co-worker at the restaurant where she worked at the same time as she worked for Speth, of offering her money for sexual favors. Speth argues that this purportedly false claim was admissible under the rape shield law, WIS. STAT. § 972.11(2)(b)3. We conclude that Speth fails to show that counsel was deficient for failing to present unspecified evidence in addition to the evidence on this matter that counsel did present.

¶54    During trial, the Jefferson County Human Services intake worker who had interviewed A.B. testified that A.B. had mentioned a "creepy guy" at the restaurant who made a similar proposal to her—to exchange sexual favors for money—as A.B. said Speth did. A.B.'s manager at the restaurant testified that a private investigator spoke with the manager about a male kitchen employee offering A.B. money for sexual favors. The manager testified that she told the investigator that she had never heard anything about that incident. Counsel also asked one of A.B.'s classmates the same question, and the classmate testified that he vaguely recalled A.B. mentioning something about a problem with a worker at the restaurant. In closing arguments, trial counsel highlighted this testimony by telling the jury that A.B. "had alluded to stuff that happened at [the restaurant]. [The manager] made clear that [it] had never happened."

¶55    At the ***Machner*** hearing, postconviction counsel asked trial counsel why she did not move to admit evidence of the restaurant allegation as a false

allegation of sexual assault under the rape shield law. Trial counsel testified that she did not think it met the definition because it was not a false allegation of sexual assault. Trial counsel also testified that she had asked the manager about it during trial, and the manager's testimony that she never heard about such an incident helped to attack A.B.'s credibility.

¶56 In its oral ruling on this issue, the circuit court found that trial counsel could not substantiate A.B.'s allegation about a coworker at the restaurant. We agree with Speth that this finding does not directly address whether counsel were ineffective in failing to present evidence of this unsubstantiated allegation as a false claim of sexual assault. However, as reviewed above, counsel did present testimony that the allegation was made and unsubstantiated, and counsel highlighted that testimony in closing argument. Speth does not identify what additional evidence counsel could have presented. Speth asserts that, in addition to the testimony by the manager and the classmate, A.B. told Officer Hanley that the co-worker offered her $500 for sex. But, this is merely additional evidence that A.B. made the allegation, not that it was false. Moreover, Speth fails to identify evidence in the record supporting this assertion.

¶57 In sum, Speth fails to show that trial counsel did not present the evidence available to them of A.B.'s unsubstantiated allegation about a restaurant worker offering her money for sex. Accordingly, Speth fails to show that counsel were deficient.

### E. Failure to move to dismiss two counts and to object to fourth amended information

¶58 Speth argues that trial counsel were ineffective for failing to move to dismiss at the close of the State's case two of the counts as unsupported by the

evidence, and failing to object to the circuit court's acceptance of the fourth amended information filed by the State at the close of evidence. We conclude that Speth fails to show that counsel performed deficiently in either respect.

### 1. Additional background

¶59     The third amended information, which was the operative information at the start of trial, contained seven counts. The State told the jury in its opening statement that the first count, soliciting prostitution, involved Speth offering to pay A.B. for sexual favors. The State told the jury that the remaining six counts concerned two separate incidents of sexual assault. The State told the jury that in one incident Speth engaged in penis-to-vagina sexual intercourse with A.B. on August 9, and that in the other incident Speth had A.B. perform oral sex on him between August 11 and 14. A.B. described these two incidents in her testimony.

¶60     At the close of the State's case, trial counsel moved to dismiss the three counts in the third information relating to the oral sex incident between August 11 and 14. Counsel argued that A.B.'s testimony about a lap dance, which was not one of the charges against Speth, occurring in the same time frame as the oral sex that was charged against him, would confuse the jury. The circuit court denied the motion because, as the State noted, the opening statements and the evidence presented by the State made it clear that the charges related only to the oral sex that occurred between August 11 and 14. The court further explained that the information could be amended to avoid any confusion.

¶61     After the close of evidence and during the jury instruction conference, the State moved to file a fourth amended information. We set out the details of the amendment to facilitate the reader's understanding of this issue.

19

¶62   The three counts concerning sexual intercourse were sexual intercourse with a child, child enticement, and causing a child to expose the child's intimate parts (A.B.'s breasts).  The third amended information properly charged the sexual intercourse and child enticement counts involving the sexual intercourse as occurring on August 9, but improperly charged the exposing intimate parts count as occurring between August 11 and 14.

¶63   The oral sex was the incident charged in a second count of sexual intercourse with a child, a second count of child enticement, and one count of exposing the defendant's genitals.  The third amended information properly charged the sexual intercourse and child enticement counts involving the oral sex, as occurring between August 11 and 14, but improperly charged the exposing Speth's genitals count as occurring on August 9.

¶64   The fourth amended information switched the dates of the offenses that were in the third amended information to reflect what the State alleged were the correct dates for the crimes.  Specifically, the causing A.B. to expose intimate parts count was properly charged on August 9; and the exposing the genitals to a child count was charged between August 11 and 14.  As a result, the three counts involving the sexual intercourse all had the offense date of August 9, and the three counts involving the oral sex all had the offense date of August 11-14.

¶65   In support of its motion to file the fourth amended information, the State explained the reasons for its motion, and Speth's trial counsel agreed both with the explanation and that the amendment was consistent with the evidence.  However, counsel noted that they intended in their closing arguments to comment on the State's not getting its dates straight until the end of trial.  The circuit court granted the motion and agreed that the late clarification of the dates was "fair

20

game to the jury." Counsel declined the court's offer to reopen evidence for the defense to offer additional information or evidence in response to the fourth amended information.

¶66 At the *Machner* hearing, trial counsel were asked why they did not at the close of the State's case move to dismiss the causing A.B. to expose intimate parts count and the exposing the genitals to a child count because there was no evidence that the offenses charged in those counts happened on the dates provided in the third amended information. Counsel did not answer that question, but only explained the motion to dismiss that they did file, described above.

¶67 Also at the *Machner* hearing, trial counsel were asked why they did not object at the close of evidence to the admission of the fourth amended information. Counsel testified that, as they recalled, they did object, but that that their objection and argument must have occurred off the record.

¶68 The circuit court did not in its oral ruling address Speth's claim based on counsel's failure to move to dismiss the causing A.B. to expose intimate parts count and the exposing the genitals to a child count at the close of the State's case. As to counsel's failure to object to the fourth amended information at the close of evidence, the court noted that there was no objection to the fourth amended information in the record. The court found that there must have been some other conversation off the record, however, because both trial counsel credibly testified as much at the *Machner* hearing. Regardless, the court further found that the amendment, in "flipp[ing] [the] dates" for the two charged offenses conformed to the parties' shared understanding of the "correct dates" for those offenses. The court also found that allowing the fourth amended information fit into the defense strategy of showing that there was a sloppy investigation and

prosecution, and that is why trial counsel ultimately decided not to object on the record to the fourth amended information being filed.

## 2. *Analysis—Failure to move to dismiss the causing A.B. to expose intimate parts count and the exposing the genitals to a child count*

¶69     Speth's argument directed at what counsel should have done at the close of the State's case with respect to the causing A.B. to expose intimate parts count and the exposing the genitals to a child count as charged in the third amended information is confusing. To the extent that Speth means to argue that the State presented insufficient evidence to convict him on these counts, he does not on appeal develop such an argument based on the applicable legal standards. Moreover, he appears to be mistaken about to what those two counts reference. Specifically, he argues that counsel failed to assert that these two counts, which according to Speth charged that A.B. exposed her genitals to Speth, had to be dismissed because the counts also charged that A.B. performed oral sex on him while she was fully clothed. Yet, as explained above, one count charged Speth with exposing his genitals to A.B. when he had A.B. perform oral sex on him, and A.B. testified that he dropped his pants during that incident. The other count charged Speth with causing A.B. to expose her intimate parts when he had sexual intercourse with A.B., and A.B. testified that she was completely naked during that incident. Thus, Speth's argument on appeal is contrary to both the third amended information and A.B.'s testimony during the State's case. Speth appears to make some additional conclusory arguments on this issue in his reply brief, which we do not consider because they are undeveloped and made for the first

22

time on reply. In sum, Speth fails to show that counsel performed deficiently for failing to move to dismiss these two counts at the close of the State's case.[3]

### 3. Analysis—Failure to object to fourth amended information

¶70 As stated, at the close of evidence the State moved to file a fourth amended information that switched the dates for two of the counts, so that all three counts concerning the sexual intercourse charged August 9 as the date of the offense and all three counts concerning the oral sex charged August 11-14 as the date of the offense. Also as stated, the circuit court determined that Speth's trial counsel did not perform deficiently based on: counsel's testimony, which the court credited, that counsel "must have" objected off the record; its finding that counsel making no objection on the record served the defense strategy of showing that there was a sloppy investigation and prosecution; and its finding that the amendment merely conformed the dates of the two counts to the evidence and the parties' shared understanding.

¶71 Speth argues that there is no record support for the circuit court's finding that counsel must have objected off the record, thereby rendering that finding clearly erroneous such that the court's determination that counsel were not deficient should be reversed. However, Speth does not address the two other bases for the court's determination, that acceding to the amendment—as counsel did on the record—furthered counsel's trial strategy, and that the amendment merely conformed to the evidence and the parties' shared understanding of the

---

[3] We note that Speth does not on appeal argue that trial counsel should have moved to dismiss the two counts at issue because, since the dates for these two counts as charged in the third amended information were incorrect, the State's evidence did not support these two counts. Therefore, we do not address this issue further.

correct dates of the charges, such that an objection would have been overruled. Because he fails to show either that these findings are clearly erroneous or that counsel's strategy was unreasonable, we conclude that he fails to show that counsel performed deficiently.

### F. Failure to object to State's closing argument

¶72 Speth argues that trial counsel were ineffective for failing to object to what he contends were three sets of improper remarks by the prosecutor in closing argument. We conclude that Speth fails to show that counsel performed deficiently because he does not establish that any of the three sets of remarks were improper.

¶73 Failing to object to the State's closing argument is not deficient "unless the State's trial commentary was improper." *State v. Bell*, 2018 WI 28, ¶14, 380 Wis. 2d 616, 909 N.W.2d 750; *see also State v. Cameron*, 2016 WI App 54, ¶27, 370 Wis. 2d 661, 885 N.W.2d 611 ("Because the prosecutor's remarks were not improper, an objection would not have been sustained. It is not deficient performance for counsel not to make a pointless objection.").

¶74 "Although there are boundaries on what prosecutors may say during trial, we leave them plenty of room to address the facts and law. 'Counsel is allowed considerable latitude in closing arguments, with discretion given to the trial court in determining the propriety of the argument.'" *Bell*, 380 Wis. 2d 616, ¶39 (quoting *State v. Burns*, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166). "[I]t is impossible to describe in detail the outer parameters of proper trial commentary. However, … those boundaries extend at least far enough to encompass fair characterizations of the law and the state of the evidence." *Bell*, 380 Wis. 2d 616, ¶40; *see also State v. Neuser*, 191 Wis. 2d 131, 137, 528

N.W.2d 49 (Ct. App. 1995) (a prosecutor's closing argument is improper if it misstates the law).

### 1. *"Golden rule" remarks*

¶75    Speth asserts that the prosecutor made an improper "golden rule" argument when she asked jurors to recall when they were teenage girls, to "excuse contradictions" in what A.B. told her friends. Speth focuses on remarks by the prosecutor regarding the generalities of teenage-girl behavior with which the female jurors would be familiar.

¶76    "In a criminal case, a golden rule argument asks the jurors to place themselves in the victim's shoes." *State v. DeLain*, 2004 WI App 79, ¶23, 272 Wis. 2d 356, 679 N.W.2d 562. "These statements are not allowed because they appeal to the jurors' sympathy for persons who have been injured or victimized by a crime." *Id.*

¶77    During closing arguments, the prosecutor said specifically to the jury, "[A.B.] … go[es] to her friends [about Speth's assaults]. This is something that I don't think is out of the realm that [is] something a teenage girl would do. Several of you were teenage girls at one point in time. Put yourself back in that time. Any issue you may have, you're going to go to your girlfriends to talk about [it] first. Is this worth going to an adult about? You heard testimony that [A.B.] did already go to her girlfriends about other previous problems in her life." The prosecutor went on to say that it was "[t]otally normal, not unusual for [A.B.] to have gone to her friends. Not unusual for her to have said to her friends not to tell anyone. She's still trying to work through her head what's going on. She's using her friends as sounding boards."

¶78 At the *Machner* hearing, one of Speth's trial counsel testified that she did not identify these remarks as a golden rule argument and "wasn't particularly concerned about that particular statement." Co-counsel testified that he noticed that statement and thought the prosecutor might have been "getting close" to a golden rule argument, but he also did not find it objectionable. The circuit court determined that there was no golden rule violation.

¶79 Speth does not show that the circuit court erred in making that determination. As an initial matter, the prosecutor made these remarks not, as asserted by Speth, "to excuse contradictions" in what A.B. told her friends, but to explain why A.B. disclosed her assaults to her friends before her parents. Speth does not otherwise explain why these remarks violate the golden rule, and we reject his argument based on these remarks as undeveloped. *See Wisconsin Conf. Bd. of Trs. of the United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶38, 243 Wis. 2d 394, 627 N.W.2d 469 (stating that we do not address arguments that are conclusory and insufficiently developed).

¶80 Moreover, on their face these remarks do not ask the jurors to sympathize with A.B. by imagining what it felt like to be her when Speth assaulted her. Rather, these remarks ask the jury to consider A.B.'s testimony about telling her friends before her parents in light of their own life experiences. Such a request is consistent with the court's instruction that the jurors "take into account matters of your common knowledge and your observations and experience in the affairs of life." *See* WIS JI—CRIMINAL 195. Speth fails to show that trial counsel were deficient for not making an objection that would have been overruled. *See State v. Stroik*, 2022 WI App 11, ¶36, 401 Wis. 2d 150, 972 N.W.2d 640 ("[A]n attorney's failure to make an objection that would have been properly overruled by the court is not deficient performance.").

## 2. *Misrepresenting DNA evidence*

¶81    Speth asserts that the prosecutor misrepresented the DNA evidence when she told the jury that the "DNA does show they were both on the same place on the couch at the same time."

¶82    At trial, A.B. testified that Speth had sexual intercourse with her on the red couch in the basement of the insurance office. A DNA analyst testified that she detected a two-person mixture of A.B.'s and Speth's DNA in a swab collected by a detective from a cushion on the red couch.

¶83    When recounting the DNA evidence in the State's closing argument, the prosecutor told the jury, "DNA doesn't tell you when or why it was put there. But DNA does show [A.B. and Speth] were both on the same place on the couch at the same time which tends to lend itself to support things that [A.B.] said."

¶84    At the ***Machner*** hearing, trial counsel testified that he did not object because "[t]hat was a fact that I thought I could more effectively rebut in my closing…. I can make [the prosecutor] look like she doesn't know what she's talking about…. [J]ust because DNA is present does not mean at the same time and that's going to make me seem more credible." The circuit court determined generally that none of the remarks challenged by Speth were prejudicial and did not specifically address this particular challenge.

¶85    Speth asserts correctly that there was no evidence that the DNA evidence showed that A.B. and Speth were on the couch at the same time. However, he does not address counsel's strategic decision not to object, or otherwise explain why counsel was deficient in following that strategy. We reject his argument on this point as undeveloped. *See **State v. Pettit***, 171 Wis. 2d 627,

646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

### 3. Scar remarks

¶86     Speth asserts that in closing argument, the prosecutor introduced "irrelevant vouching evidence" regarding A.B.'s failure to notice a scar on Speth's abdomen by stating that the prosecutor had a large scar on her arm that many friends failed for years to notice. Speth does not define improper vouching. As noted by the State, "Improper vouching occurs when a prosecutor expresses her personal opinion about the truthfulness of a witness or when she implies that facts not before the jury lend a witness credibility." *United States v. Cornett*, 232 F.3d 570, 575 (7th Cir. 2000).

¶87     As to the prosecutor's comments about her own unnoticed scar, trial counsel testified at the *Machner* hearing that counsel did not see it as improper vouching testimony, but rather as "the State trying to water down the testimony we elicited about a scar." Trial counsel further testified that "that's not evidence. Nothing about that is evidence…. It's closing argument…. I did not think it was objectionable." Counsel testified that counsel "consciously thought at the time that [it] was fair game as, sort of, you can bring into your jury deliberations common sense and your experiences in everyday life." As with the prosecutor's remarks regarding DNA, the circuit court determined generally that none of the remarks challenged by Speth were prejudicial and did not specifically address this particular challenge.

¶88     Speth does not address trial counsel's testimony about why they did not object to the prosecutor's scar remarks. Specifically, Speth does not dispute counsel's view that the remarks did no more than ask the jurors to consider their

common experiences as they weigh A.B.'s failure to notice Speth's scar or that an objection would not have been successful. Accordingly, we conclude that Speth has failed to show that counsel was deficient in this respect. *See **State v. Reynolds**,* 206 Wis. 2d 356, 369, 557 N.W.2d 821 (Ct. App. 1996) (it is not deficient performance to fail to make an objection that would have been unsuccessful).

### *G. Jury selection*

¶89     Speth argues that trial counsel were ineffective for failing to move to strike a prospective juror, K., as subjectively biased. We conclude that Speth fails to show that counsel performed deficiently because he does not establish that counsel's strategic explanation for not doing so was unreasonable.

¶90     "'The United States Constitution and Wisconsin's Constitution guarantee an accused an impartial jury.'" **State v. Lepsch**, 2017 WI 27, ¶21, 374 Wis. 2d 98, 892 N.W.2d 682 (quoted source omitted). "To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial." **State v. Faucher**, 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999). There are three types of prospective juror bias: (1) statutory bias; (2) subjective bias; and (3) objective bias. **Id.** at 716. As stated, Speth asserts that trial counsel should have moved to strike prospective juror K. based on subjective bias.

¶91     During voir dire, trial counsel explained that a defendant has a right to remain silent and not testify during trial, and that a decision not to testify should not be held against the defendant. Counsel asked if any juror had a problem with that, and K. indicated that he did. K. said, "I believe more to the fact that not saying anything is, believing that you're hiding something and it's likely that if

you're able to talk about it it's more inclination to me that you are innocent. If you don't talk, I'm going to be suspicious."

¶92   Counsel then said that the judge would provide instructions and asked the jurors in general, "[I]f the Judge tells you, you can't hold that against the defendant … is that going to be a problem for anybody to abide by that?" There was no response by any juror to that question.

¶93   Counsel again asked K., "[I]f the Judge gives you an instruction that's not like how you'd normally do stuff, and he says that's the rule here, is that going to be [what you do]?" K. replied, "I can listen to the Judge…. [I]t's just, [the defendant not testifying] might cause me to think about things one way or the other."

¶94   At the *Machner* hearing, trial counsel testified that she did not move to strike K. because counsel knew that they were going to play Speth's police interview at trial, and that the interview would be more effective than Speth's own testimony at trial. Counsel also testified that, while she did not have her jury notes and could not remember specifics about K., she recalled having a follow-up conversation with him, and co-counsel and Speth were very involved in the jury selection process. Co-counsel testified that he had also told the jurors that the judge would instruct them that they could not hold Speth's silence against him, and no juror indicated that they would have a problem with that.

¶95   In its oral ruling on this issue, the circuit court determined that counsel's strategy regarding jury selection was reasonable.

¶96   Speth argues that prospective juror K. was subjectively biased because he twice during voir dire indicated that he believed that, as Speth asserts,

a defendant's choice not to testify is "inconsistent with innocence." However, Speth disregards trial counsel's strategic decision not to remove K. as a juror after considering all of his statements during voir dire. Counsel made this decision because they believed that Speth's police interview that they intended to present to the jury, in which Speth did talk about the charges and denied them, would be much stronger than in-court testimony. Speth does not argue that this strategic decision was unreasonable or fell outside the wide range of professionally competent assistance. *See Strickland*, 466 U.S. at 690. Accordingly, he fails to show that counsel performed deficiently in this respect.

## *H. Admission of W-4 form*

¶97    Speth argues that trial counsel were ineffective for failing to object to the admission of A.B.'s W-4 form, which the State disclosed on the first morning of trial, on the ground that it was untimely disclosed. As we explain, we reject this argument as unsupported by the record and undeveloped.

¶98    At the *Machner* hearing, trial counsel testified that the State had disclosed the insurance office employment file for A.B. on the first day of trial, and that the file included A.B.'s W-4 form. Postconviction counsel asked a series of questions about trial counsel's failure to object to the admission of the untimely disclosed W-4 form based on it being a "big part" of the State's case on the solicitation charge. Trial counsel testified repeatedly that the State's primary evidence on the solicitation charge was A.B.'s testimony and evidence about what she was paid, not the W-4 form, and that trial counsel did not understand why postconviction counsel considered the W-4 form to be important to the State's case or to the jury.

31

¶99     On appeal, Speth asserts that the W-4 form was "key evidence" for the State's case on the solicitation charge. However, the record citation in support of the assertion is the portion of the *Machner* hearing summarized above. Speth provides no citation to the record that shows that the W-4 form was at trial either entered into evidence or referenced or relied on by the State (and our limited review of the record reveals no such showing); nor does Speth explain what information was on the W-4 form. Accordingly, we reject Speth's ineffective assistance argument on this issue as unsupported by the record and undeveloped. *See Pettit*, 171 Wis. 2d at 646 (stating that we may decline to consider arguments that are insufficiently briefed).

### I. Snapchat evidence

¶100   Speth argues that trial counsel were ineffective for failing to present additional evidence showing that A.B. and not Speth deleted Speth's Snapchat account as a contact from A.B.'s Snapchat account.[4] We conclude that Speth fails to show that counsel performed deficiently because he does not develop his argument with citation to the record and does not explain why counsel's strategic explanation for not presenting additional evidence was unreasonable.

¶101   At trial, Lake Mills Police Officer Jessica Johnson testified that she was a school liaison officer at A.B.'s high school. Johnson testified that A.B. may have asked her on November 3 or 4, 2022, about blocking Speth on Snapchat, and Johnson would have likely told A.B. that it was okay to do so. Officer Hanley,

---

[4] Snapchat is a social media platform on which users can "share text, photographs, and video recordings, collectively known as 'snaps.'" *Commonwealth v. Carrasquillo*, 179 N.E.3d 1104, 1109 (Mass. 2022).

who investigated the case, testified at trial about a Snapchat record showing a log of actions involving Speth's Snapchat account ("the log"). Hanley testified that, as he understood the log, it showed that A.B. completed the action of blocking Speth on Snapchat; that Speth completed the action of deleting A.B. as a contact on Snapchat; and that both actions were completed at the same time on November 4, 2022. Hanley testified that Speth was in jail at the time both actions were completed; that Speth would not have had access to his phone at that time; and that Hanley had listened to jail calls in which Speth told his wife "not to delete anything." Hanley further testified, "I believed that there was reason to believe that I needed to continue to investigate potentially someone else altering this [Snapchat] information."

¶102 At the *Machner* hearing, trial counsel testified that counsel had consulted an expert about the Snapchat data but decided not to have the expert testify at trial because counsel did not believe that it would be helpful. Specifically, counsel testified that counsel did not believe that an expert was necessary to explain the Snapchat information, namely that, as the defense was arguing and Officer Hanley's testimony suggested, A.B. must have deleted Speth on Snapchat, since Speth could not have done it because he was in jail. Counsel also testified that "highlighting the fact that [Speth] and [A.B.] had had a Snapchat conversation that was ongoing until the morning of his arrest did not seem like a good strategy to me."

¶103 Speth testified that when a person deletes someone as a friend on Snapchat, the app deletes the entirety of the person's communications with that friend. Speth further testified that he was in the Jefferson County Jail when the communications with A.B. on Snapchat were deleted, and that his phone had been logged into evidence by that time. Speth testified that he had informed his counsel

of this, and he asked that they present this information during trial. Speth testified that he understood that an expert was going to testify at trial as to how Snapchat worked and the mechanics of deleting contacts and communications in the app.

¶104 During oral argument after the *Machner* hearing, the circuit court questioned why an expert would be needed to discuss the Snapchat data. Postconviction counsel responded that an expert was not needed to do so, but argued that the evidence of what the Snapchat data showed "was never presented." In its oral ruling on this issue, the court noted postconviction counsel's response that no expert was necessary and generally found no basis to conclude that trial counsel's performance on this and other issues related to digital evidence was deficient.

¶105 Speth argues that additional evidence interpreting the Snapchat log was necessary to counter the implication of Officer Hanley's testimony that Speth or a co-conspirator must have deleted Snapchat communications between Speth and A.B. "to hide the inappropriate nature of their relationship." We reject this argument as unsupported by the record and incompletely developed.

¶106 Speth asserts that "the jury never heard" evidence that only A.B. could have deleted the Snapchat communications, and "instead was told the opposite." However, Speth does not support this assertion with citation to the record. The relevant testimony summarized above shows that a jury could reasonably infer from Officer Hanley's testimony that only A.B. could have deleted the Snapchat communications, and Speth cites no evidence showing that someone else did. Also, having conceded in the circuit court that no expert testimony was necessary on this point, Speth also does not specify how trial counsel should have presented "additional evidence" on this point. In addition,

Speth disregards trial counsel's explanation for not reinforcing this point with additional evidence, namely, so as not to call attention to the fact that the communications between Speth and A.B. stopped once he was arrested. Speth does not explain why this strategic decision was unreasonable and, accordingly, fails to show that counsel performed deficiently in this respect.

## *J. Production of evidence on Speth's work computers*

¶107   Speth argues that trial counsel were ineffective for failing to move to compel production of information on Speth's work computers, specifically, a document titled "Murdock Rules" from Speth's mentor. This document includes a rule stating in part, "Pay [employees] for more than they work." Speth argues that production of this rule at trial would have explained to the jury that he overpaid A.B. as part of his usual business practice, not for sexual favors. We conclude that Speth fails to show that counsel performed deficiently because he does not explain why counsel's strategic explanation for not filing a motion to compel was unreasonable; nor does he explain why the circuit court erred in finding that production of this rule would have been cumulative to evidence that was presented at trial regarding Speth's practice of overpaying his employees.

¶108   At trial, A.B. testified that, when she began working at the insurance office, Speth proposed that he add money to her paychecks for sexual favors, and that, after he had touched her breast while they were travelling in his truck to a work event a few days later, he told her that he would be adding 12 hours to her weekly paychecks. Officer Hanley testified that payroll records showed that A.B. was paid for more hours than she testified she worked, and for more hours than she wrote down on the log that she created. This testimony and evidence showed

that Speth consistently paid A.B. for at least 10 hours more per week than she recalled working, except for her final paycheck.

¶109 Four former employees who worked for Speth at the insurance office testified that it was common for Speth to pay them above their earned wages or commissions.

¶110 At the *Machner* hearing, trial counsel testified that counsel had a copy of the Murdock Rules before trial. Counsel testified that counsel did not think the rules were important and were concerned about how the rules would be entered into evidence if Speth did not testify. Counsel testified that they presented other witnesses at trial to testify about Speth's practice of overpaying employees so that the Murdock Rules were not needed. Counsel further testified that counsel did not file a motion to compel production of the information on the work computer because counsel did not know if it would uncover information that was unhelpful to the defense. Counsel testified that counsel also believed that they could make a stronger case by highlighting that the State performed a subpar investigation by not examining the information on the computer, and that they had less to gain by having the computer information themselves.

¶111 In its ruling on this issue, the circuit court credited trial counsel's concern of being unable to enter the Murdock Rules into evidence without Speth testifying. The court also found that there was ample testimony about Speth's practice of overpaying employees. Accordingly, the court concluded that trial counsel's performance was not deficient for failing to file a motion to compel production of the rules on Speth's work computer.

¶112 As noted, Speth argues that trial counsel's failure to compel production of the Murdock Rules "precluded the jury … from learning why [A.B.]

was overpaid" and that no other witness "offered this information." This argument is refuted by the record and is incomplete. Four witnesses testified at trial that Speth as part of his usual business practice paid them for more than they worked. Speth does not explain what presentation of the rule would have added to that testimony to support the arguments made by his trial counsel at closing that A.B. was similarly overpaid as part of that practice. In addition, Speth does not explain why counsel's strategic explanations for not filing a motion to compel, also summarized above, were unreasonable. For these reasons, Speth fails to show that counsel's performance on this point fell outside the wide range of professionally competent assistance. *See* **Strickland**, 466 U.S. at 690.

### K. Purported other acts evidence

¶113 Speth argues that trial counsel were ineffective for failing to object to A.B.'s testimony about incidents of sexual conduct by Speth other than the individual charges concerning the August 9 sexual intercourse and August 11-14 oral sex incidents. Speth argues that A.B.'s testimony about these incidents was inadmissible other acts evidence under WIS. STAT. § 904.04(2) (providing that evidence of other crimes or acts is generally not admissible to "prove the character of a person in order to show that the person acted in conformity therewith"). We conclude that Speth fails to show that counsel performed deficiently because he fails to refute the State's argument that any objection on this basis would have been meritless.

¶114 At trial, A.B. testified about the following incidents when she was employed at the insurance office: an incident when Speth kissed her in the basement of his home; an incident when A.B. gave Speth a lap dance at his request

and he touched her breasts and butt in the basement of the insurance office; and an incident when Speth kissed her and touched her vagina in his office.

¶115   At the *Machner* hearing, trial counsel testified that she did not see a legal way to object to this testimony, since it was relevant to the solicitation charge.

¶116   We conclude that Speth fails to show that counsel performed deficiently because he does not refute the State's argument that this testimony was not other acts evidence, but provided direct evidence in support of the charge that Speth solicited a child for an "act of prostitution" contrary to WIS. STAT. § 948.08. *See* WIS. STAT. § 944.30(1m)(a), (e) (defining an act of prostitution to include sexual intercourse and sexual contact); *State v. Payette*, 2008 WI App 106, ¶16, 313 Wis. 2d 39, 756 N.W.2d 423 (referring to the definition of prostitution in § 944.30 when reviewing the soliciting a child for prostitution offense). Accordingly, any objection to this testimony as inadmissible other acts evidence would have been meritless. *See Reynolds*, 206 Wis. 2d at 369 (it is not deficient performance to fail to make an objection that would have been unsuccessful).

*L.  Exclusion of evidence that A.B. had a sexually transmitted disease*

¶117   Speth argues that his trial counsel were ineffective for failing to "properly support" their motion, which the circuit court denied, to admit evidence that A.B. had a sexually transmitted disease (STD). We conclude that Speth fails to show that counsel performed deficiently in supporting their motion to admit this evidence.

¶118   Speth filed a pretrial motion seeking in camera review of A.B.'s medical records, specifically related to STD tests. The motion recounted that in

the material provided by the State during discovery, there was a report to Child Protection Services by A.B.'s mother disclosing that A.B. had tested positive for an STD in December 2022. At a pretrial status conference, the court excluded the STD test results evidence because it was not relevant and was inadmissible under the Rape Shield Law, and, alternatively, because the risk of unfair prejudice substantially outweighed its probative value. In rejecting Speth's postconviction motion on this issue, the court stated, "I stand on my pretrial ruling."

¶119   On appeal, Speth argues that trial counsel inadequately argued in support of their motion that the STD evidence was not barred by the Rape Shield Law. However, Speth does not address the alternative basis for the circuit court's decision excluding the STD evidence, that its probative value was substantially outweighed by the risk of unfair prejudice. By not addressing what counsel should have argued to refute that alternative basis for exclusion of the evidence, Speth fails to show that trial counsel performed deficiently.

*M. Use of Criminal Jury Instruction 255A*

¶120   Speth argues that it was plain error for the circuit court to provide WIS JI—CRIMINAL 255A, and that trial counsel were ineffective for failing to more strenuously object. We conclude that Speth fails to show either plain error or deficient performance.

¶121   Instruction 255A, as provided to the jury here, reads:

> If you find that the offense charged was committed by the defendant, it is not necessary for the State to prove that the offense was committed on a specific date. If the evidence shows beyond a reasonable doubt that the offense was committed during the time period alleged in the information[,] that is sufficient.

39

¶122 To repeat, three of the seven counts in the applicable information related to an alleged incident on August 9, 2022, in which Speth had sexual intercourse with A.B. Three counts related to an alleged incident between August 11 and 14, 2022, in which A.B. performed oral sex on Speth. The seventh count alleged that Speth solicited A.B. to engage in an act of prostitution between June 20 and November 1, 2022.

¶123 In the jury instruction conference, trial counsel and the circuit court had a lengthy discussion about whether the jury should be presented with Instruction 255 or 255A. As explained during the discussion, Instruction 255 concerns allegations of an offense being committed on a specific date, while Instruction 255A concerns allegations of an offense being committed during a date range. *See also* WIS JI—CRIMINAL 255 (cmt.) (Instruction 255 should "be used only whe[n] the charging document alleges that the offense occurred on a specific date."). Trial counsel objected to either instruction being given, since there were multiple counts in the information that alleged a specific offense date and multiple counts that alleged a date range, and including either instruction would "hopelessly confuse the jury." Trial counsel further expressed concern that if only Instruction 255A were read, the jury would have trouble discerning that the instruction only applied to the counts alleging a date range, and "what they're going to hear is the State doesn't have a burden to prove that any of this occurred at a specific time." The circuit court ultimately ruled that it would provide Instruction 255A.

¶124 At the *Machner* hearing, postconviction counsel asked why trial counsel had not asked that Instruction 255A only be given for the charges that involved a date range, as opposed to a specific offense date. Trial counsel testified that counsel had objected to the instruction being used at all, and that, "If I should

have objected differently or more, I will agree I should have because … I do not like that jury instruction and I do not think it was appropriate in this case."

¶125 In its oral ruling on this issue, the circuit court noted that both the jury instructions and the verdict forms listed for each count the specific time period, either a single date or a date range, of the offense charged. The court stated that Instruction "255A was given because of the … counts identified in the jury instructions … and … in the special verdict … [which] listed a range of time in those specific counts…. The trial counsel's … performance was not deficient in that regard…."

¶126 Speth argues that the circuit court should have "tied" Instruction 255A to the "specific substantive instructions" for each of the counts. Speth argues that, because the court did not do so, the jury could have considered whether each charged incident happened during the broadest time period alleged, between June and November, and the State was relieved of its burden to prove each crime in the actual period of time charged for that crime. However, Speth does not address the aspect of the court's ruling in which it explained that the specific period of time was already provided to the jury in the substantive jury instructions and verdict form for each of the counts. Nor does he refute the State's argument that "the time period alleged in the information" referred to in Instruction 255A can include both one single day, as alleged in three of the counts, and a date range, as alleged in four of the counts. Speth also asserts that "issues" were caused regarding his alibi evidence, but he does not explain this assertion. Speth fails to show that counsel's performance on this point fell outside the wide range of professionally competent assistance. *See **Strickland***, 466 U.S. at 690.

*N. Substitute DNA analyst*

¶127   Speth argues that trial counsel were ineffective for not objecting to the testimony of a substitute DNA analyst who testified as a peer reviewer of the work conducted by the testing analyst, in violation of Speth's rights under the Confrontation Clause.   We conclude that Speth fails to show that counsel performed deficiently because the law was unsettled at the time.

¶128 The Confrontation Clause of the United States Constitution guarantees criminal defendants, in federal and state prosecutions, the right to confront witnesses who provide evidence against them.  *Crawford v. Washington*, 541 U.S. 36, 42 (2004).  In *Crawford*, the United States Supreme Court interpreted this guarantee to require that, for "testimonial evidence" of an absent witness to be admitted against a defendant at trial, the witness must be unavailable for trial, and the defendant must have had a prior opportunity for cross-examination.  *Id.* at 68. In *State v. Griep*, 2015 WI 40, ¶¶3, 57, 361 Wis. 2d 657, 863 N.W.2d 567, our supreme court concluded that the Confrontation Clause is not violated when an expert witness testifies to an independent opinion based on the expert's independent review of another, unavailable analyst's forensic test results.   In *Smith v. Arizona*, 602 U.S. 779, 783 (2024), the United States Supreme Court clarified that the Confrontation Clause is violated when a substitute analyst is called to testify to the accuracy and results of another, unavailable analyst's forensic testing.   The trial in this case took place in August 2023, before the Supreme Court issued its decision in *Smith*.

¶129   At a status conference before trial, the prosecutor informed the circuit court that the State had notified the defense that the DNA analyst who had performed the testing at issue was unavailable for trial, and the State would instead

have a peer review analyst testify as a substitute witness. Trial counsel told the court that there was no objection to the substitute analyst testifying.

¶130 At trial, the substitute analyst testified that she observed no evidence of tampering or other issues when she reviewed the work of the DNA analyst who had tested the samples submitted by the Lake Mills Police Department. The substitute analyst also testified to the results of DNA testing performed on several samples, including whether Speth's or A.B.'s DNA was present in those samples.

¶131 At the *Machner* hearing, trial counsel testified that while she was aware that the substitute expert had not performed any of the DNA testing, counsel was comfortable that the substitute expert could adequately testify to the lab's common practice and procedure regarding any possible DNA contamination in this case. Speth testified that trial counsel never consulted him about the State's use of a substitute expert, but just told Speth on the morning of his trial that they had stipulated to it.

¶132 In its oral ruling on this issue, the circuit court noted that it was not until after the trial in this case concluded that the United States Supreme Court ruled that one expert cannot testify "testimonially" as to another expert's opinion. Nevertheless, the court found that trial counsel was deficient here for not objecting to the State's use of a substitute analyst. The court then stated that "after review of all of the circumstances and the totality of the evidence in this case, and the totality of the circumstances, the Court further finds that the deficient performance did not prejudice [Speth]."

¶133 Speth argues that his trial counsel should have objected to the substitute analyst's testimony in light of the holding in *Smith*, 602 U.S. at 783. Speth suggests that, even though *Smith* had not yet been decided, the *Smith* court

was merely applying prior law to the same effect. The State responds that the circuit court would have overruled such an objection based on the then-controlling holding in *Griep*, 361 Wis. 2d 657, ¶¶3, 57. Speth did not in his appellant's brief address *Griep* or explain why it did not control here. In his reply brief, Speth counters that *Smith* abrogated *Griep* and the federal and state case law on which *Griep* relied. We agree with the State that, to the extent that *Smith* abrogated and clarified *Griep* and the law that applied at the time of trial, that law was then unsettled, and "an attorney is not deficient for failing to pursue an 'unsettled proposition of law.'" *State v. Robinson*, 2024 WI App 50, ¶32, 413 Wis. 2d 534, 12 N.W.3d 535 (quoted source omitted).

### III. Newly discovered evidence

¶134 Speth argues that he is entitled to a new trial based on newly discovered evidence: specifically, the civil lawsuit that A.B. filed against him after his conviction. We conclude that the evidence of A.B.'s civil lawsuit is not newly discovered evidence because it is cumulative to the evidence presented at the criminal trial.

¶135 Appellate courts review a circuit court's decision to grant or deny a newly discovered evidence motion for an erroneous exercise of discretion. *State v. Plude*, 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42. We will sustain a circuit court's decision to grant or deny a new trial if the court "examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *State v. Sullivan*, 216 Wis. 2d 768, 780-81, 576 N.W.2d 30 (1998).

¶136 To succeed on a motion for a new trial based on newly discovered evidence, the evidence must sufficiently establish that a defendant's conviction

resulted in a "manifest injustice." *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60. To show a manifest injustice, the defendant must first prove by clear and convincing evidence that: (1) the new evidence was discovered after conviction; (2) the defendant was not negligent in seeking the new evidence; (3) the new evidence is material to an issue in the case; and (4) the new evidence is not merely cumulative.[5] *Id.*

¶137 At trial, A.B.'s mother testified that A.B. had hired a civil attorney to pursue a lawsuit against Speth for his alleged actions underlying the criminal case. A.B.'s mother testified that A.B. hired her civil attorney after Speth listed his house for sale, and that the family was concerned that Speth was going to "run," not that Speth would not have money to pay them following a lawsuit.

¶138 In the civil complaint, which was filed in November 2023, A.B. alleged that she and Speth had sexual intercourse "on at least two occasions." In his postconviction motion, Speth asserted that the civil complaint undermined A.B.'s credibility because she had testified at the criminal trial that she and Speth had sexual intercourse only once, and the filing of the civil complaint also showed A.B.'s financial motivation.

¶139 In its oral ruling on this issue, the circuit court found that A.B.'s hiring of a civil attorney to file a civil lawsuit and her possible financial motive were addressed at trial. The court also found that the existence of the civil

---

[5] If the defendant establishes these factors listed above, then the circuit court must determine whether there is a reasonable probability that if the jury heard the new evidence, it would have had a reasonable doubt about the defendant's guilt. *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60. Because we conclude that Speth fails so show that the proffered new evidence "is not merely cumulative," *see id.*, we do not address the reasonable probability prong of the newly discovered evidence analysis.

complaint containing two allegations of sexual intercourse was not available as evidence at time of trial.

¶140 Speth renews his arguments here that the filing of the lawsuit is highly relevant to impugn A.B.'s credibility in two respects: (1) it shows that A.B. had "significant financial motivation" to lie about Speth's alleged sexual misconduct in the criminal case; and (2) the civil complaint alleges that Speth and A.B. had sexual intercourse "on at least two occasions," which contradicts A.B.'s testimony at the criminal trial about only one such occasion.

¶141 As to the filing of a civil lawsuit and A.B.'s financial motive to lie about her allegations against Speth, the circuit court found that evidence of both was presented the criminal trial. Speth does not show that this finding is clearly erroneous, or explain his conclusory assertion that this evidence is "not merely cumulative." As to the difference between the number of times that A.B. said she and Speth had sexual intercourse (two in the civil complaint versus one at the criminal trial), Speth does not explain why this is not cumulative of the numerous inconsistencies in A.B.'s testimony that Speth elicited and argued to the jury at the criminal trial. *See State v. McAlister*, 2018 WI 34, ¶39, 380 Wis. 2d 684, 911 N.W.2d 77 ("Whe[n] the credibility of a prosecution witness was tested at trial, evidence that again attacks the credibility of that witness is cumulative.").

¶142 In addition, Speth does not in his reply brief engage with the State's arguments supporting the proposition that the civil lawsuit is cumulative evidence for the reasons just explained. Rather, Speth focuses on explaining why the circuit court erred in concluding that the civil lawsuit is not newly discovered evidence because it had not been filed at the time of trial. Our conclusion that the civil lawsuit is not newly discovered evidence because it is cumulative is dispositive;

accordingly, we need not and do not address Speth's argument of circuit court error on a different basis.

## IV. New trial in interest of justice

¶143 Speth argues that this court should grant discretionary reversal under WIS. STAT. § 752.35. Under § 752.35, this court may order a new trial "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." Speth argues that justice has miscarried and the real controversy has not been fully tried based on "the combination of structural errors and deficient practices of trial counsel." However, we have concluded that Speth has failed to establish any error or deficient practice by trial counsel. Accordingly, there is no basis for this court to conclude that this is an "exceptional case" warranting discretionary reversal. *See State v. Schutte*, 2006 WI App 135, ¶62, 295 Wis. 2d 256, 720 N.W.2d 469 ("We exercise our authority to reverse in the interest of justice under WIS. STAT. § 752.35 sparingly and only in the most exceptional cases.").

## CONCLUSION

¶144 For the reasons stated, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.